UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| UNITED STATES OF AMERICA, | Case No. 12-CR-0012 (PJS/SER) |
|---|---|
| | Case No. 14-CV-3235 (PJS) |
| Plaintiff, | |
| v. | ORDER |
| DEMETRIUS CHARLES EDWARD DERDEN, | |
| Defendant. | |

---

Julie E. Allyn and Steven L. Schleicher, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Brian N. Toder, CHESTNUT CAMBRONNE PA; Katherian D. Roe, OFFICE OF THE FEDERAL DEFENDER, for defendant.

Defendant Demetrius Charles Edward Derden moves under 28 U.S.C. § 2255 to vacate his conviction and sentence for interference with commerce by robbery. Derden asks that his guilty plea be set aside on grounds of ineffective assistance of counsel. Specifically, Derden contends that he pleaded guilty only because his attorney erroneously informed him that, if he did not plead guilty, he would face a mandatory life sentence under 18 U.S.C. § 3559(c)(1). Derden also contends that, even if his conviction is not set aside, he should be resentenced under *Johnson v. United States*, 135 S. Ct. 2551 (2015).

For the reasons that follow, the Court rejects Derden's claim of ineffective assistance of counsel and denies his motion to set aside his *conviction*. The Court will,

however, defer a decision on Derden's motion to set aside his *sentence* until after the

Supreme Court issues its decision in *Beckles v. United States*, 136 S. Ct. 2510 (2016)

(mem.).

## I.  BACKGROUND

Derden robbed a convenience store in Mayer, Minnesota, on December 3, 2011.

The robbery was particularly brazen and cruel.  Derden entered the store wearing a

mask and carrying a BB gun that appeared to be a real handgun.  Derden pointed the

gun at the clerk—an 18-year-old high-school student who was the only person in the

store—and demanded the money in the cash register.  The clerk willingly handed over

the money.  Not satisfied, Derden then ordered the clerk at gunpoint into a back room

and demanded that the clerk give him the money stored in two safes.  The clerk knew

the combination to one of the safes; he opened that safe and gave the money to Derden.

But the clerk did not know the combination to the other safe.  Derden ordered the clerk

to get on his knees, held the gun to the back of the clerk's head, and told the clerk that

his life depended on remembering the combination to the second safe.  The terrorized

clerk begged Derden not to kill him.

The clerk then heard a click.  Realizing that the gun was not real or not

functioning, the clerk attempted to stand up.  Derden attacked him, pushing him down

and striking him in the head with the gun.  In the ensuing struggle, Derden bit the

clerk's finger and struck him again with the gun.   Derden fled with $2,359.  The clerk

called the police and eventually was taken by ambulance to a hospital, where he was

treated for multiple lacerations, abrasions, bruises, and other wounds.  The clerk now

bears permanent scars on his face.

Fortunately, during the struggle with Derden, the clerk was able to tear off

Derden's mask and jacket.  Police examined the mask and jacket at the scene and

quickly identified Derden as the likely robber after finding his check card—embossed

with his name—in a pocket of the jacket.  PSR ¶ 7.  When police arrested Derden at his

home, they found $1,141 in cash hidden in a stuffed animal.  *Id.* ¶ 8.

Derden was charged with interfering with commerce by robbery in violation of

the Hobbs Act, 18 U.S.C. § 1951.  After Derden's motion to suppress evidence was

denied, ECF No. 50, Derden's attorney, Steve Bergeson, negotiated a plea agreement

with the government.  One of the concessions that the government made in that plea

agreement was a commitment not to appeal Derden's sentence unless it was under

151 months.  Plea Agm't ¶ 12.  Another concession was a commitment not to seek a life

sentence under the "three strikes" provision of 18 U.S.C. § 3559(c)(1).  Plea Agm't ¶ 7.

Section 3559(c)(1) mandates a term of life imprisonment for a defendant

convicted of a "serious violent felony" if the defendant has two prior convictions of

serious violent felonies.[1]  A life sentence may not be imposed under this provision

unless the government files an information under 18 U.S.C. § 3559(c)(4) and 21 U.S.C.

§ 851(a).  If the government files such an information, the court must analyze whether

the defendant has the requisite three strikes—an analysis that typically focuses on

whether each of the predicate convictions meets the intricate definition of "serious

violent felony" in § 3559(c)(2)(F).  Throughout these proceedings, it has never appeared

likely that Derden would qualify for a life sentence under § 3559(c)(1).[2]

Bergeson sent Derden a copy of the proposed plea agreement, noting in his cover

letter (dated June 19, 2012) that "the agreement states that the government will not ask

for a life sentence."  Def.'s Ex. 1.[3]  Bergeson testified at the evidentiary hearing on

Derden's § 2255 motion that he reviewed the plea agreement with Derden in person

before Derden pleaded guilty.  ECF No. 124 [Evid. Hr'g] at 10:4-11:5, 18:16-19:4.

---

[1]The statutory maximum for Hobbs Act robbery is otherwise 20 years.  *See* 18 U.S.C. § 1951(a).

[2]Derden's criminal history included prior convictions for theft from a person, first-degree aggravated robbery, and simple robbery.  PSR ¶¶ 30, 33-34.  Derden's theft offense was not one of the offenses listed in § 3559(c)(2)(F)(i), nor was it punishable by 10 years' imprisonment as required by § 3559(c)(2)(F)(ii).  *See* PSR ¶ 30; Minn. Stat. § 609.52, subd. 2(1).  Moreover, Derden pleaded guilty to the two robberies on the same day.  PSR ¶¶ 33-34.  But § 3559(c)(1)(A) requires that serious violent felony convictions be "on separate prior occasions."

[3]Citations to exhibits refer to the exhibits submitted at the December 21, 2015 evidentiary hearing.

Bergeson presumed that he specifically reviewed the § 3559(c)(1) waiver with Derden, although Bergeson did not have a clear memory of doing so.  *Id.*  According to Bergeson, most of his conversations with Derden focused on whether the robbery had a sufficient nexus to interstate commerce and whether the career-offender guideline would apply at sentencing.  *Id.* at 10:7-11, 18:20-25.  Bergeson surmised that he would not have said much to Derden about § 3559(c)(1) because a life sentence "was never on the table."  *Id.* at 30:17-25.  Bergeson testified—unequivocally— that he never told Derden that Derden would face a mandatory life sentence if he did not plead guilty.  *Id.* at 31:21-32:4.

Derden's testimony contradicted Bergeson's.  Derden testified that Bergeson and he discussed § 3559(c)(1) at great length before his plea because he was unsure whether it applied to him.  *Id.* at 39:20-40:7.  According to Derden, Bergeson told him § 3559(c)(1) *would* apply to him—i.e., that, if convicted, he would receive a mandatory life sentence.  *Id.* at 40:24-41:9.  Derden maintained that, despite his doubts about Bergeson's advice, he deferred to Bergeson's expertise and agreed to plead guilty to avoid the possibility of a life sentence.  *Id.* at 41:18-42:7, 42:12-24, 47:8-20.  Derden testified that, had he known that § 3559(c)(1) did not apply to him, he would not have pleaded guilty.  *Id.* at 43:24-44:12, 48:16-49:18, 55:25-56:6, 66:22-24.

The Court conducted a change-of-plea hearing on August 24, 2012.  At the beginning of the hearing, the Court instructed Derden that, if he was confused or concerned about anything discussed at the plea hearing—or if he just wanted to give more thought to something—he should tell the Court or his attorney.  ECF No. 84 [Plea Hr'g] at 4:8-13 ("So if anything happens today that confuses you or that worries you or that you want to think about, please make sure you get help from me or your attorney before you plead guilty because after you plead guilty it may be too late for us to help you.").  The Court then questioned Derden to confirm that he was competent to enter a plea and that he understood the rights he would forfeit by pleading guilty, as well as the potential punishments he would face.  *Id.* at 4:14-17:6.

In addition, the prosecutor (Julie Allyn) reviewed the plea agreement to ensure that Derden understood it.  Allyn and Derden specifically discussed the government's waiver of its right to proceed under § 3559(c)(1):

> MS. ALLYN:  And now this paragraph 7, you understood there was a point in time where we thought maybe you were like a three strikes and you are out, is what's it called, where the government could look for a life sentence for you?
>
> THE DEFENDANT:  Yeah, I understand.
>
> MS. ALLYN:  *You might not have qualified for that anyway*, but regardless the government is saying we're not even to look at that [sic], we're not going to seek that.  Okay?

THE DEFENDANT:  Okay.

MS. ALLYN:  But now there is the issue of forfeiture—

THE COURT:  You can't get a life sentence unless the government seeks it.  That's something I can't impose on you, unless the government is seeking it.  That's something where I can't change it.  So if the government is not seeking a life sentence, you are not going to get a life sentence.

THE DEFENDANT:  I understand.

*Id.* at 22:19-23:13 (emphasis added).  Derden did not ask any questions about § 3559(c)(1) after this exchange, even though Allyn's comments made it clear that the government was not convinced that Derden was eligible for a life sentence under § 3559(c)(1), and even though Derden now claims that fear of such a life sentence was the only reason he was planning to plead guilty.  Instead, Derden admitted to robbing the convenience store, and he pleaded guilty.  *Id.* at 30:4-34:17.

A probation officer then prepared a presentence investigation report ("PSR"). The PSR concluded that, based on a total offense level of 29 and a criminal-history category of VI, Derden's recommended range under the United States Sentencing Guidelines was 151 to 188 months.  PSR ¶ 71.  This range was driven in large part by the PSR's determination—over Derden's objection—that Derden was a career offender under U.S.S.G. § 4B1.1 because his prior convictions for theft from a person and first-

degree aggravated robbery were both "crimes of violence" as defined in U.S.S.G.

§ 4B1.2(a).  PSR ¶¶ 26, 30, 33; PSR add. at A.1-2.

The day before sentencing, the Court received a pro se letter from Derden.  ECF

No. 66.  Derden wrote, "Since Mr. Bergenson [sic] was assigned my case, I have been

provided adequate, competent and zealous representation."  *Id.* at 1.  Derden then told

the Court exactly why he had pleaded guilty:

> It is certainly true that there is no excuse that can be
> made and no point of view offered that should serve as a
> basis for justifying such a transgression.  And in accordance,
> with that fact alone, I sought to amicably resolve this
> case—it was in the best interest of justice, my victim and the
> community.  I viewed going to trial as making a mockery of
> Justice and an added burden to my victim, the community
> and the District of Minnesota.

*Id.* at 1.

At his sentencing on February 6, 2013, Derden continued to press his objection to

his classification as a career offender.  Derden continued to argue (among other things)

that his prior theft conviction was not a "crime of violence" as defined in U.S.S.G.

§ 4B1.2(a).  ECF No. 81 [Sentencing Hr'g] at 3:20-9:1.  The Court ultimately overruled

Derden's objection.  *Id.* at 10:7-13:23.  After adopting the PSR's guideline range of 151 to

188 months and considering the factors listed in 18 U.S.C. § 3553(a), the Court sentenced

Derden to 170 months' imprisonment.  *Id.* at 14:2-9, 32:18-36:14.

About a week after sentencing, Derden sent a pro se letter to the Court that again objected to his classification as a career offender.  ECF No. 72.  Because Derden was represented by counsel, the Court declined to consider this pro se filing.  ECF No. 73. Derden appealed his sentence, once again challenging his classification as a career offender under the guidelines.  ECF No. 74.  The Court of Appeals dismissed his appeal on May 22, 2013, ECF No. 86, and Derden's conviction became final when the time to petition the Supreme Court expired 90 days later, *see Clay v. United States*, 537 U.S. 522, 525 (2003).

On August 18, 2014, Derden filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  ECF No. 90.  That motion was focused on the same issue that Derden had repeatedly raised: his classification as a career offender. Specifically, Derden identified two related grounds in his § 2255 motion:  (1) that the Court erroneously "used the modified categorical approach to use the conduct of petitioner[']s prior [theft] conviction to find petitioner was convicted of" a crime of violence; and (2) that "[t]he court at sentencing failed to comply with Fed. R. Crim. P. 32(i)(3)(B)" by not "acknowledg[ing]" his objection to "the inclusion of language" in the PSR recounting the factual circumstances of his prior theft offense.  ECF No. 90 at 4-6.  Derden's § 2255 motion did not even mention § 3559(c)(1), much less assert a claim that he had pleaded guilty only because Bergeson gave him incorrect advice.

-9-

Derden's § 2255 motion was accompanied by a 68-page memorandum.  ECF No. 91-2.  That memorandum overwhelmingly focused on whether Derden was properly classified as a career offender.  Not until page 57—in a section captioned "The District Court Failed to Comply with Federal Rule of Criminal Procedure 32(i)(3)(B)"— did Derden allege that he pleaded guilty "because at the time Movant was misled to believe that if he failed to do so the government would seek a life without release enhancement.  Movant believed that to be true because he was told so by his court appointed counsel."  *Id.* at 57.  Derden asserted that his prior convictions "could never have served as a basis for an enhancement to life without release pursuant to 18 U.S.C. § 3559(c)(1)."  *Id.* at 58.  He maintained that the government's suggestion that he might face a life sentence was "clear extortion" and that "but for those false and misleading threats this Movant would not have plead guilty."  *Id.*  The memorandum's "conclusion" paragraph did not, however, ask that Derden's conviction be set aside; instead, Derden sought only resentencing.  *Id.* at 68.

The Court denied Derden's motion to vacate his sentence.  ECF No. 93.  The Court explained that, under Eighth Circuit precedent, a defendant may not use § 2255 to challenge a guideline determination.  The Court also explained that, even if Derden could use § 2255 to challenge a guideline determination, the Court would reject his challenge to his classification as a career offender.  *Id.* at 3-6.  The Court said nothing

about Derden's allegation that he had pleaded guilty only because he received bad advice from Bergeson about § 3559(c)(1).  Again, Derden had not mentioned that allegation in his § 2255 motion—and, although Derden had devoted a few sentences to the allegation in his 68-page memorandum, Derden did not ask that his conviction be set aside.

Derden filed a motion asking the Court to modify its ruling about his career-offender status; that motion did not say a word about § 3559(c)(1) or the validity of Derden's guilty plea.  ECF No. 96.  The Court denied the motion.  ECF No. 97.  Derden filed yet another motion asking the Court to modify its ruling about his career-offender status; and yet again, Derden said nothing about § 3559(c)(1) or the validity of his guilty plea.  ECF No. 98.  The Court dismissed Derden's motion for lack of jurisdiction.  ECF No. 99.

Derden next requested a certificate of appealability from the Court of Appeals. ECF No. 100.  The Eighth Circuit denied Derden a certificate on the career-offender issue, but granted a certificate and remanded to this Court for further proceedings on the following issue:  "whether trial counsel provided ineffective assistance of counsel by advising [Derden] that he faced a mandatory term of life imprisonment if he did not plead guilty pursuant to the agreement."  ECF No. 104.

The Court appointed counsel for Derden and granted his application to proceed

in forma pauperis.  ECF Nos. 105, 108, 109.  The Court also granted Derden's motion to

expand the scope of the remand so that he could make a claim under *Johnson v. United*

*States*.  ECF No. 113.  The Court conducted an evidentiary hearing and took testimony

from both Bergeson and Derden.  ECF No. 119.

## II.  ANALYSIS

### A.  Ineffective Assistance

The Sixth Amendment guarantees criminal defendants the right to effective

assistance of counsel.  Generally speaking, to prevail on a claim of ineffective assistance

of counsel, a defendant must show (1) that his attorney performed deficiently (i.e.,

below an objective standard of reasonableness) and (2) that he was prejudiced by his

attorney's deficient performance (i.e., there is a reasonable probability that, but for

counsel's errors, the outcome of the proceeding would have been different).  *Strickland*

*v. Washington*, 466 U.S. 668, 687-96 (1984).  Movants under § 2255 bear the burden of

proving their contentions by a preponderance of the evidence.  *Pough v. United States*,

442 F.3d 959, 964 (6th Cir. 2006); *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993);

*Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).

1.  Counsel's Performance

The Court assumes (without deciding) that Bergeson would have performed below an objective standard of reasonableness if Bergeson had indeed advised Derden that, if he did not plead guilty, he would be sentenced to life in prison under § 3559(c)(1).  But the Court finds by a preponderance of the evidence that Bergeson did not give that advice to Derden.

Bergeson emphatically testified that he never told Derden that he would receive a life sentence.  The Court credits Bergeson's testimony—and does not credit Derden's testimony—not only because of the demeanor of the two witnesses, but because of the surrounding circumstances.

Bergeson is a competent attorney—and, for the reasons described above, a competent attorney would have recognized that there was little chance that Derden would be found to have two prior convictions of "serious violent felonies" for purposes of § 3559(c)(1).  Indeed, Bergeson passionately argued that Derden did not even have "two prior felony convictions of . . . a crime of violence" for purposes of the career-offender guideline.  U.S.S.G. § 4B1.1(a).  A defendant who does not have two convictions of "crimes of violence" for purposes of the Sentencing Guidelines most certainly does not have two convictions of "serious violent felonies" for purposes of § 3559(c)(1).  The Court credits Bergeson's testimony that, because a life sentence was

not a realistic possibility, Derden and he did not talk much about § 3559(c)(1).  *Id.* at 30:17-25.

It is also important to note that Derden is an unusually smart defendant who has played an unusually active role in his own defense.  Derden, too, has passionately argued—again and again and again—that he is not a career offender for purposes of the Sentencing Guidelines.  Derden has made these arguments in lengthy, detailed, sophisticated memoranda and letters.  The Court finds it highly unlikely that Derden would docilely accept the advice of his attorney that he had committed two "serious violent felonies" for purposes of § 3559(c)(1) when Derden clearly did not believe that he had even committed two "crimes of violence" for purposes of the Sentencing Guidelines.

In sum, the Court finds that Bergeson did not tell Derden that he would receive a life sentence under § 3559(c)(1) if he did not plead guilty.  Necessarily, then, the Court also finds that Bergeson's performance was not constitutionally deficient.  On this basis alone, Derden's ineffective-assistance claim fails.

## 2.  Prejudice

Derden's ineffective-assistance claim also fails because he has not established prejudice.  In the guilty-plea context, prejudice means that "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty

and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  The

Court finds by a preponderance of the evidence that Derden would not have proceeded

to trial—but instead would have pleaded guilty—even if Bergeson had told him that

there was no chance that he would receive a life sentence under § 3559(c)(1).

As the Court has already explained, Derden is a smart, hands-on defendant.

While Derden was represented by counsel, Derden followed his case very closely; in

fact, he "demanded" (Derden's word) that Bergeson send him copies of court decisions

to read.  ECF No. 124 [Evid. Hr'g] at 60:10-11.  In addition, the docket reflects a number

of pro se filings from Derden, and each of those pro se filings analyzes difficult legal

issues with sophistication.

Derden now claims that he desperately wanted to go to trial, and that he pleaded

guilty only to avoid being sentenced to life in prison under § 3559(c)(1).  If that were

true, the Court is certain that Derden would have raised this issue early and often with

his lawyer and the Court—just as he repeatedly raised the career-offender issue.  For

example, at the change-of-plea hearing, Derden would not have remained silent after

the prosecutor suggested that § 3559(c)(1) might not even apply to him.  And Derden

would have mentioned § 3559(c)(1) in at least one of his communications with the

Court.

Yet Derden said *not one word* about a possible life sentence until he filed his

§ 2255 motion.  To the contrary, in a letter that Derden sent to the Court shortly before

he was sentenced, Derden explained exactly why he pleaded guilty—not because he

feared a life sentence, but because "it was in the best interest of justice, my victim and

the community," and because going to trial would have made "a mockery of Justice and

an added burden to my victim, the community and the District of Minnesota."  ECF

No. 66 at 1.

Derden also filed a pro se motion shortly after he was sentenced.  That motion

focused on the career-offender issue; it did not mention § 3559(c)(1).  ECF No. 72.  Even

when Derden filed his § 2255 motion, he said nothing about the issue in the motion

itself, ECF No. 90, or in the first 57 pages of the 68-page memorandum that he filed in

support of the motion, ECF No. 91-2.  And although he did mention the issue in two

paragraphs in his memorandum, Derden did not ask that his conviction be vacated; he

asked only that he be resentenced.  ECF No. 91-2, at 68.

After the Court denied his § 2255 motion, Derden twice asked the Court to

reconsider its ruling.  ECF Nos. 96, 98.  Derden did not ask the Court why it had not

ruled on his claim regarding the erroneous advice that he received about § 3559(c)(1),

most likely because Derden (like the Court) did not believe that he had *made* such a

claim.  Instead, Derden continued to argue that he was not a career offender under the

Sentencing Guidelines.  In short, Derden's own words make clear that the threat of a life sentence under § 3559(c)(1) was barely on his radar; there is no contemporaneous evidence that it was crucial to his decision to plead guilty.

The Court also finds that Derden would not have gone to trial—even if Bergeson had told him that there was no chance that he would receive a life sentence under § 3559(c)(1)—because Derden had nothing to gain by going to trial.  Derden almost certainly would have been found guilty, he almost certainly would not have received a three-level reduction in his offense level under § 3E1.1 for acceptance of responsibility, and the Court would have spent several days being exposed to evidence about Derden's atrocious conduct and its impact on his victim.

Bergeson testified that he advised Derden that his case was going to be difficult to defend.  ECF No. 124 [Evid. Hr'g] at 33:2-6.  That was sound advice.  At the evidentiary hearing on Derden's § 2255 motion, Bergeson and Derden were able to identify only two potential lines of defense:

First, Bergeson suggested that the defense might have questioned the ability of the gas-station clerk to identify Derden after his mask was torn off.  *Id.* at 32:19-25.  But impeaching the clerk's identification would have done nothing to undermine the other evidence linking Derden to the robbery, including the fact that he left his jacket with his

bank card at the scene of the robbery, and the fact that he had over $1,000 in cash hidden in a stuffed animal in his home.

Second, Derden suggested that he might have challenged the sufficiency of the nexus between his offense and interstate commerce. *Id.* at 48:1-12, 60:18-61:6. But the government needs to prove "only a minimal effect on interstate commerce to support a conviction under the Hobbs Act." *United States v. McCraney*, 612 F.3d 1057, 1064 (8th Cir. 2010) (citing *United States v. Williams*, 308 F.3d 833, 838 (8th Cir. 2002)). The Eighth Circuit has held that "robberies from small commercial establishments qualify as Hobbs Act violations so long as the commercial establishments deal in goods that move through interstate commerce." *United States v. Dobbs*, 449 F.3d 904, 912 (8th Cir. 2006) (citing *Williams*, 308 F.3d 833; *United States v. Vong*, 171 F.3d 648 (8th Cir. 1999)). There is no doubt that the convenience store that Derden robbed "deal[s] in goods that move through interstate commerce," as Derden himself admitted at the change-of-plea hearing. ECF No. 84 [Plea Hr'g] at 32:16-33:3 ("I understand that the store customarily purchased goods through interstate commerce.").

For these reasons, the Court finds by a preponderance of the evidence that, even if Bergeson had advised Derden that he would not receive a life sentence under § 3359(c)(1)—and even if Derden had accepted that advice—Derden would not have proceeded to trial but instead would have pleaded guilty. Because Derden has not

established that he was prejudiced by Bergeson's allegedly deficient performance,

Derden's ineffective-assistance claim is rejected.  *See Hill*, 474 U.S. at 59.

### B.  *Johnson v. United States*

Derden also claims that, even if he received effective assistance of counsel and

his guilty plea was valid, he is entitled to be resentenced under the Supreme Court's

recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015).  In *Johnson*, the Supreme

Court held that the "residual clause" of the Armed Career Criminal Act ("ACCA"), 18

U.S.C. § 924(e)(2)(B)—a clause that is materially identical to the "residual clause" of the

career-offender guideline, U.S.S.G. § 4B1.2(a)(2)—was void for vagueness.  135 S. Ct. at

2557.

Derden and the government agree that, if *Johnson* had been decided before

Derden was sentenced, Derden would not have been classified as a career offender

under § 4B1.1 of the Sentencing Guidelines.  But Derden and the government disagree

about whether *Johnson* applies retroactively in a § 2255 proceeding challenging the

application of the career-offender guideline.

That question is now pending before the Supreme Court in *Beckles v. United*

*States*, 136 S. Ct. 2510 (2016) (mem.).  The Court will therefore defer ruling on Derden's

*Johnson* claim until after the Supreme Court issues its decision in *Beckles*.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.    The motion to vacate, set aside, or correct the sentence of defendant

Demetrius Charles Edward Derden [ECF No. 90] is DENIED insofar as it

is based on a claim of ineffective assistance of counsel.  No certificate of

appealability will be issued on that claim.

2.    The Court will DEFER ruling on the motion insofar as it is based on a

claim under *Johnson v. United States*, 135 S. Ct. 2551 (2015), and that claim

is STAYED pending the Supreme Court's decision in *Beckles v. United*

*States*, 136 S. Ct. 2510 (2016).

Dated:  October 5, 2016                          s/Patrick J. Schiltz
                                                 Patrick J. Schiltz
                                                 United States District Judge